JUDGE ENGELMAYER

# 13 CV 1106

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------x
ABIGAIL STRUBEL,                          )
individually and on behalf of             )
all others similarly situated,            )
                                          )
                         Plaintiff,       )
                                          )
          - against -                     )
                                          )
TALBOTS CLASSICS                          )
NATIONAL BANK and                         )
THE TALBOTS, INC.                         )
                                          )
                         Defendants.      )
----------------------------------------------x
```

RECEIVED FEB 19 2013

No.

CLASS ACTION

JURY DEMANDED

## COMPLAINT

1.     This action seeks redress for the illegal practices of Talbots Classics National Bank (the "Bank"), owned and operated by The Talbots, Inc. (together, "Defendants"), for providing to customers of its Talbots store credit card accounts ("Talbots card") disclosures that violated the Truth in Lending Act ("TILA").

2.     As alleged in greater detail below, the Bank failed to furnish accurate disclosures in the manner mandated by TILA provisions and by the corresponding federal regulations governing account opening disclosures furnished in connection with new credit card accounts. More specifically, the Bank failed to furnish the full set of required disclosures regarding the rights and obligations of the consumer and the lender with respect to billing disputes and unsatisfactory merchandise or

services billed to the consumer's account. Additionally, the Bank furnished inaccurate disclosures with respect to the initial year's terms.

3.     TILA's purpose is to assure meaningful disclosure of credit terms in order to (i) allow consumers to compare more readily the various credit terms available; (ii) enable consumers to avoid the uninformed use of credit; and (iii) protect consumers against inaccurate and unfair billing practices. 15 U.S.C. § 1601(a). The Bank's conduct violates the express provisions of the TILA and the applicable Regulations.

4.     Under the private enforcement provisions of TILA, plaintiff and the proposed class seek the recovery of statutory damages of up to $1,000,000 with respect to each of the Bank's failures to comply.

<em>Jurisdiction and Venue</em>

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 1640(e), because this action arises under TILA, 15 U.S.C. § 1601 *et seq.*

6.     Venue is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district because the Bank transacts business in this district and the interests of justice require maintenance of this action in this district.

*Parties*

7.     Plaintiff Abigail Strubel resides in New York, New York, which is within this district.

8.     Strubel is a "consumer," as that term is defined by § 1602(h) of TILA, because this complaint arises from the Bank's offer and extension of credit to Strubel, a credit card holder, for personal, family or household purposes.

9.     Upon information and belief, Defendants Talbots Inc. and the Bank are doing business in the State of New York and throughout the United States, with principal places of business in Massachusetts and Rhode Island, respectively.

10.    The Bank is a "creditor," as that term is defined by § 1602(f) of TILA and Regulation Z ("Regulation Z"), 12 C.F.R. § 226.2(a)(17) and 12 C.F.R. §1026.2(a)(17), because at all relevant times, the Bank, in the ordinary course of its business, regularly – *i.e.*, more than 25 times a year – extended or offered to extend consumer credit for which a finance charge is or may be imposed, which is payable in more than four installments.

*Factual Allegations*

11.    Strubel is the holder of a Talbots card account issued by the Bank generally intended for the purchase of goods or services at Talbots retail locations and from the Talbots website.

12.    Upon information and belief, Strubel opened her Talbots account while she was shopping in a store located in New York County, New York on or about June 18, 2012. See Exhibit A.

12.    The Bank issued Strubel account-opening disclosures on or about June 18, 2012, which are attached as <u>Exhibit B</u>.

13.    All class members herein, as defined below, were furnished account-opening disclosures by Talbots Bank similar to the one attached as <u>Exhibit B</u>.

*Class Allegations*

14.    Strubel brings this action individually and on behalf of all persons similarly situated.

15.    The proposed class (the "Class") consists of all persons who, according to the Bank's records, (i) opened a Talbots account and made an initial purchase on that account on or after June 18, 2012; and (ii) and were furnished, before that purchase was made, account-opening disclosures with a billing rights statement substantially similar to that in <u>Exhibit B</u>, or no billing rights statement at all.

16.    Specifically excluded from this class are the Bank, any entity in which the Bank has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

17.    The members of the class for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable. In light of the tens of thousands of credit cards issued by the Bank every year, the number of class members is believed to be in excess of 1,000 persons.

18.    Plaintiff's claims are typical of, if not identical to, all members of the class and Plaintiff does not have any interest that is adverse or antagonistic to the

4

interests of the class. If the conduct of the Bank violates TILA as applied to Plaintiff, then it violates TILA with respect to the Class.

19.     Plaintiff will fairly and adequately protect the interests of the Class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

20.     The Class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Defendants' actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to the class as a whole.

21.     The class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Because damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class to seek redress individually for the wrongs they have suffered. Members of the Class do not have a particular interest in individually controlling the prosecution of separate actions.

22.     There are questions of law and fact which are common to the members of the Class and which predominate over questions affecting only individual members. Common questions of law and fact include, but are not limited to, whether the Bank has a standardized procedure by which it fails to make a disclosure of a credit customer's billing rights compliant with TILA and Regulation Z.

23.    Upon information and belief, the Class consists of thousands of customers.

24.    Thus, a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

a)    Common questions of law and/or fact predominate over any individual questions which may arise and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of a repetitive individual basis; and

b)    The aggregate volume of the individual class members' claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation.

25.    Class certification is also fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impede their ability to protect their interests. Moreover, since the actual monetary damages suffered by, or statutory damages available to, individual Class members may be relatively small, although significant in the aggregate, the expenses and burdens of individual litigation make it impossible or effectively impossible for the members of the Class to seek individual redress for the TILA violations committed by Defendant.

26.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. The records of the individuals encompassed within the Class are in Defendants' possession.

## COUNT I

### *Violations of the Truth in Lending Act*

27.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

28.     Congress authorized the Federal Reserve Board ("FRB" or "Board") to promulgate regulations granting it broad authority to effectuate the purposes of TILA; that authority is now delegated to the Bureau of Consumer Financial Protection ("Bureau"). 15 U.S.C. §1604(a)(2008); 15 U.S.C. §1604(a).

29.     The set of regulations that the FRB promulgated to implement TILA is known as Regulation Z, 12 C.F.R. §226.1 *et seq.*

30.     To reflect its assumption of TILA rulemaking authority as of July 21, 2011, the Bureau issued an interim final rule republishing Regulation Z with only minor changes that did not impose any new substantive obligations on creditors. 76 FR 79768 (Dec. 22, 2011); 12 C.F.R. §1026.1 *et seq.*

31.     TILA requires the creditor to furnish an array of account-opening disclosures before a credit consumer initially uses her card account to purchase goods or services.15 U.S.C. § 1637(a).

7

32.     One of the TILA-mandated account-opening disclosures is "[a] statement, in a form prescribed by regulations of [previously, the Board, and now] the Bureau of the protection provided by sections 1666 and 1666i of this title to an obligor and the creditor's responsibilities under sections 1666a and 1666i of this title." 15 U.S.C. §1637(a)(7).

33.     The statement of obligor's protections and the creditor's obligations prescribed by the Board and adopted by the Bureau is contained in Model Form G-3(A). 12 C.F.R. §226.6(b)(5)(iii); 12 C.F.R. §1026.6(b)(5)(iii);. 12 CFR Part 226, Appendix G; 12 CFR Part 1026, Appendix G.

34.     The Bank's account-opening disclosures provided to Strubel contained several omissions with respect to the obligor's protections and the parties' obligations.

35.     The billing rights notice ("BRN") that the Bank furnished Strubel, as seen in Exhibit B, is not substantially similar to the Model Form G-3(A), reproduced as Exhibit C, in language or substance.

36.     The BRN omitted a warning to consumers who would initiate billing-error correspondence to contact the creditor "[a]t least 3 business clays before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong." 12 C.F.R. § 226 Appendix G, Model Form G-3(A); 12 C.F.R. § 1026 Appendix G, Model Form G-3(A).

37.     The BRN also omitted the creditor's responsibility, within 30 days of receiving a consumer's billing-error correspondence, to inform the consumer that it

indeed received such correspondence, irrespective of whether the purported error had or had not already been corrected by then.

38.     The BRN also omitted the preconditions governing the consumer's limited right not to pay for a purchase of goods or services when she is dissatisfied with that purchase: more specifically, it failed to specifically disclose that in order for the consumer to exercise this right, the credit card itself, rather than cash advances or checks from the card account, must have been directly used for the purchase and the purchase must not have already been fully paid for.

39.     The BRN also omitted the consumer's responsibility to contact the creditor in writing (or electronically) when she is dissatisfied with a purchase of goods or services in order to exercise that right not to pay the remaining amount due on the purchase.

40.     The BRN also employed language throughout the notice that was dissimilar to the language contained in Model Form G-3(A).

41.     Regulation Z also requires that account-opening disclosures reflect the legal obligations of the parties. 12 C.F.R. §226.5(c); 12 C.F.R. §1026.5(c).

42.     The account-opening agreement The Bank furnished also states in Paragraph 8 that the lender may change any term or add new terms to the agreement without limitation, so long as it provides to the consumer any advance notice required by law. Exhibit B.

43.     However, in the first 12 months a credit account is open, a creditor is obliged not to impose, and a credit consumer is not obliged to pay, any additional or

higher fees or interest charges over and above those provided for in the account-opening disclosures. 15 U.S.C. §1666i-2(a); 12 C.F.R. §226.55(b)(3)(iii); 12 C.F.R. §1026.55(b)(3)(iii).

44.     As such, in failing to timely provide account-opening disclosures that reflected the legal obligations of the parties, the Bank further failed to comply with Regulation Z and TILA. 15 U.S.C. § 1637(a); 12 C.F.R. §226.6; 12 C.F.R. §1026.6.

45.     Without being properly informed by the Bank of the additional protections that using a Talbots card account may provide, and unable to compare those to the benefits of using competing forms of credit or payment, Plaintiff and the Class are being injured.

46.     With respect to each of the Bank's violations of TILA for inaccurate disclosures, as alleged above, Plaintiff and the Class are entitled to recover up to $1,000,000 in statutory damages, together with costs and reasonable attorney fees. 15 U.S.C. § 1640(a)(2).

WHEREFORE, Plaintiff Abigail Strubel prays on her behalf and on behalf of the Class that judgment be entered against Defendants as follows:

(1)     An order certifying the proposed Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2)     A declaration that the Bank's systematic and standard policy of furnishing account documents that make inaccurate or incomplete disclosures to customers with respect to billing rights violates the Truth in Lending Act;

(3)     An injunction permanently prohibiting the Bank from engaging in the

conduct described;

(4)     Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

(5)     Attorney fees, litigation expenses, and costs; and

(6)     Such other and further relief as to this Court may seem just and

proper.

### *Jury Demand*

Plaintiff respectfully requests a trial by jury.

Dated:  New York, New York
        February 19, 2013

                                        Respectfully Submitted,

                            By:   *Brian L. B*

                                  Brian L. Bromberg
                                  One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff</u>

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Avenue
New York, NY 10025
(212) 678-6546

# Exhibit A

TALBOTS 1323
8200 ONO BROADWAY
2289-2291 BROADWAY
NEW YORK, NY 10524
212-875-8753

# TALBOTS
*Established 1947*

STORE  323        REG  3        TRANS  3594
SALE              06/18/2012  EXP  0692129
Cashier  0097684

4374 NEW CHERRY RED 36425940        11.30
50% Off Entire Purchase    Summer Sale
                                    5.70-
15% JP Enrollment                   1.99-

    Subtotal                        11.30
    Total                           11.30
    Talbots Charge                  11.30
        XXXXX2033 K
        AUTH 029744

#1

## CUSTOMER COPY

06/18/2012 06:44:42 PM

THANK YOU FOR SHOPPING AT TALBOTS

**Did you earn points today?**
Classic Awards members earn points
toward $25 Appreciation Dividends
every time they make a purchase.
Look below to see how many points
Classic Awards members earned today.

    Classic Awards Members earn
    Classic Awards Black        14
    Classic Awards Platinum     11
    Classic Awards Red           6

For more information or to enroll, see
a Sales Associate, call 1-800-825-7687
or visit talbots.com/classicawards

# Exhibit B



TALBOTS RETAIL INSTALLMENT CREDIT AGREEMENT/
CREDIT SALE CONTRACT/RETAIL INSTALLMENT CONTRACT
Revolving Account Plan

In this Talbots Retail Installment Credit Agreement/Credit Sale Contract/Retail Installment Contract (this **"Agreement"**), the words "you" and "your" refer to any person who signs an Application for a Talbots Charge Account, has requested and is issued a Talbots credit card, or is authorized to use a Talbots Charge Account, and the words "we," "us," and "our" refer to Talbots Classics National Bank (**"TCNB"**), 4 Blackstone Valley Place, Lincoln, RI 02865, its affiliates, and any person or entity to whom or to which this Agreement may be assigned (which you agree may occur without advance notice to you). All credit cards for your Talbots Charge Account (**"Account"**) are issued, and all credit for your Account is extended, by TCNB.

**1. Promise to Pay:** You are responsible for and agree to pay all amounts owed on your Account. You and we agree to everything included in this Agreement.

**2. Cost of Credit:** No interest charge is imposed in any monthly billing period (a) in which there is no balance at the beginning of the billing period (the **"Previous Balance"** shown on your monthly statement) or (b) in which payments received and credits issued within twenty-five days after the Billing Date shown on your monthly statement equal or exceed the balance at the beginning of the billing period. If we do not receive the full amount due (the **"New Balance"** shown on your monthly statement) within twenty-five days after the Billing Date shown on your monthly statement, we will compute an Interest Charge on the Average Daily Balance by applying a monthly periodic rate of 2.08% **(ANNUAL PERCENTAGE RATE 24.99%).**

**3. Method of Computing Interest Charge:** We compute the Interest Charge on your Account by applying the monthly periodic rate to the "Average Daily Balance" of your Account (including current transactions). To get the "Average Daily Balance" we take the beginning balance of your Account each day, add all new purchases, all billed and unpaid Interest Charges, and all late fees, and subtract all payments and credits. This gives us the daily balance. Then we add up all the daily balances for the billing period and divide the total by the number of days in the billing period. This gives us the "Average Daily Balance." (We treat credit balances as zero balances when we figure the daily balance and "Average Daily Balance.") However, if the total Interest Charge accrued on your Account for a billing period (figured as described above) is greater than zero but less than $0.50, the **INTEREST CHARGE** for that billing period will be **$0.50.**

Your payment will be allocated to pay off the goods purchased as follows: first to any unpaid Interest Charge, next to any unpaid Late Fee, then to pay off each purchase, oldest purchase first.

**4. Minimum Monthly Payment:** You agree to pay at least the Minimum Payment Due shown on your monthly statement on or before the Payment Due date shown on that statement. Your minimum monthly payment will be 1/20th of the New Balance, but not less than $20.00, plus any unpaid late fees from the prior month and any minimum payment from a previous billing period, or the entire New Balance if it is less than $20.00. The minimum payment will include any past due amount. You may pay more than the minimum payment due in any month, but if you do, and there is a balance due, you must continue to make minimum payments in future months. **You may pay your total indebtedness (the New Balance) or any part thereof (but no less than the Minimum Payment Due) on or before the Payment Due Date.**

**5. Late Fee:** We may impose a late fee of up to $35.00 for any minimum payment not received by the Payment Due Date.

**6. Default/Collection Costs:** If you fail to pay any minimum monthly payment when due, if you declare bankruptcy, or if you die, it will be a default, and, subject to any right you may have under state law to receive notice of and to cure such default, we may declare the entire unpaid balance in your Account due and payable. If your Account is referred to an attorney who is not our salaried employee, and we prevail in a suit against you to collect the amount you owe, in addition to the full amount owed and any court costs, you agree to pay our reasonable attorney's fees to the extent permitted by applicable law.

**7. Canceling or Limiting Your Credit:** We have the right at any time to limit or terminate the use of your Account without giving you notice in advance. All credit cards we issue remain the property of TCNB, the card issuer. If requested, you agree to return any credit card issued to you. You agree to tell us promptly if any credit card we issue to you is lost or stolen.

8. Changes and Additions: We may (a) change any term of this Agreement, including without limitation the rate of INTEREST CHARGE, and (b) add new terms to this Agreement, including without limitation new terms that do not pertain to subject matters addressed in this Agreement, by furnishing you notice of the change or the addition to the extent required by applicable law. If permitted by applicable law, all changed terms and all new terms may at our option be applied to the balance existing in your Account at the time of the change or the addition and to any future balance. THE RATE OF THE INTEREST CHARGE PROVIDED FOR ABOVE, OR TO BE IMPOSED BY ANY SUCH AMENDMENT, IS NOT, AND SHALL NOT BE, MORE THAN THE MAXIMUM PERMITTED BY LAW.

9. Credit Investigation: You authorize us to investigate your credit history and to obtain information about your creditworthiness by obtaining consumer reports and by making direct inquiries of businesses where you have accounts and where you work. We may request consumer reports from consumer reporting agencies in considering your Application for your Account and later in connection with updates, renewals, extensions of credit, or to collect amounts owed on your Account. Upon your request we will tell you whether a consumer report was requested and the name and address of any consumer reporting agency that furnished the report. You agree we may report your performance under this Agreement to consumer reporting agencies and others who may properly receive the information.

10. Disputed Accuracy of Credit Report: If you believe we have reported inaccurate information about you to a consumer reporting agency, please contact us at TCNB, 4 Blackstone Valley Place, Lincoln, RI 02865. When you notify us, provide your account number, identify the inaccurate information and tell us why you believe it is inaccurate. If you have the credit report that includes the inaccurate information, include a copy.

11. Change of Address: You agree to notify us promptly in writing if you move. Until we receive, process, and verify your new address, we will continue to send monthly statements and other notices to the last address we have on file for your Account.

12. Disputed Amounts: All written communications about disputed amounts, including without limitation any check or other payment instrument in an amount less than the full amount due that you send to us marked "paid in full," you tender with other conditions or limitations, or you otherwise tender as full satisfaction of a disputed amount, must be sent to us at the address for billing errors or questions shown on your monthly statement.

13. No Waiver by Us: You agree we have the right without notice to you to delay or refrain from enforcing our rights under this Agreement without losing them. For example and without limitation, you agree we may extend the time to make payments without extending the time to make other payments, accept late or partial payments without waiving our right to have future payments made when they are due, and waive any late fee in case of a late payment without losing our right to impose a late fee for other late payments.

14. Telephone Monitoring: To assure that we are providing you with our high standard of customer service and that our Associates are complying with our policies and all applicable laws, our supervisors may listen to and record incoming and outgoing customer telephone calls.

15. Miscellaneous: This Agreement will survive termination of your Account and repayment of all amounts due under this Agreement. If any part of this Agreement is determined to be invalid under any law, the invalidity will not invalidate the remaining parts of this Agreement.

16. Governing Law: You agree this Agreement is not valid until we accept it in Rhode Island and all credit we extend to you is extended from Rhode Island. You also agree this Agreement is governed only by applicable federal law and Rhode Island law, even if you do not reside in Rhode Island or use your credit card for your Account or otherwise make a purchase in Rhode Island.

**Notice to New York Residents:** New York residents may contact the New York State Banking Department at 1-800-518-8866 to obtain a comparative listing of credit card rates, fees and grace periods.

**Notice to Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**Notice to Wisconsin Residents:** No provision of a marital property agreement, unilateral statement under Wis. Stat. Section 766.59, or a court decree under Wis. Stat. Section 766.70 shall adversely affect a creditor's interest unless the creditor, prior to the time credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred.

See reverse side for important information.

NOTICE TO THE BUYER:  (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to an exact, completely filled-in copy of the agreement you sign at the time you sign it. (3) Under the law, you have the right to prepay the full amount due under this agreement at any time and under certain conditions to obtain a partial refund of the service charge. Keep this agreement to protect your legal rights. (4) If you desire to pay off in advance the full amount due, the amount which is outstanding will be furnished upon request. (5) Residents of MA: You may cancel a purchase under this agreement if it has been signed by a party thereto at a place other than the address of the seller which may be his main office or branch thereof; provided, you notify the seller in writing at his main office or branch, by ordinary mail posted, by telegram sent or by delivery, not later than midnight of the third business day following a purchase under this agreement. (6) Residents of WA: You may cancel any purchases made under this charge agreement if the seller or his representative solicited in person such purchase, and you sign an agreement for such purchase, at a place other than the seller's business address shown on the charge agreement, by sending notice of such cancellation by certified mail return receipt requested to the seller at his address shown on the charge agreement, which notice shall be posted not later than midnight of the third day (excluding Sundays and holidays) following your signing of the purchase agreement. If you choose to cancel this purchase, you must return or make available to seller at the place of delivery any merchandise, in its original condition, received by you under this purchase agreement.
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NOTE: The information about the costs of the card described in this application is accurate as of the date of printing in March, 2011. This information may have changed after the date of printing. To find out what may have changed, write to us at Talbots Classics National Bank (TCNB), 4 Blackstone Valley Place, Lincoln, RI 02865.

Creditor: Talbots Classics National Bank (TCNB)
By: *Sharon M. Browne*
Sharon M. Browne

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask you for your name, address; date of birth, social security number and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents. This information is not used in our evaluation of your credit worthiness.

NOTICE: The following is important information regarding your right to dispute billing errors.

**YOUR BILLING RIGHTS: KEEP THIS NOTICE FOR FUTURE USE.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

Notify Us In Case of Errors or Questions About Your Bill
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the

Tabular Summary of Certain Disclosures as Required by Federal Law

| INTEREST RATES AND INTEREST CHARGES | |
| --- | --- |
| Annual Percentage Rate (APR) for Purchases | **24.99%** |
| Paying Interest | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $0.50. |
| For Credit Card Tips from the Federal Reserve Board | To learn more about the factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at http://www.federalreserve.gov/creditcard. |

| FEES | |
| --- | --- |
| Penalty Fees | |
| · Late Payment | Up to $35 |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)." See your account agreement for more details.

address listed on the reverse side of your bill for billing errors or questions. Write to us as soon as possible. We must hear from you no later than 60 days after we send you the first bill on which the error or problem appears. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
- If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including INTEREST CHARGES, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find we made a mistake on your bill, you will not have to pay any INTEREST CHARGES related to any questioned amount. If we didn't make a mistake, you may have to pay INTEREST CHARGES, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was about.

Special Rule for Credit Card Purchases
If you have a problem with the quality of property or services you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

Privacy Policy
We are providing you this notice in compliance with federal regulations. Please read this carefully and retain it for your records. As a Talbots Charge account customer, you may share personal information with us. We share this information with our corporate affiliates in order to process transactions that you have requested on your Talbots Charge account. We also use this information to improve our services to you and for marketing and promotional purposes. Because the security of your personal information is very important to us, we restrict access to your nonpublic personal information to those associates who need to know that information to provide products or services to you. We also maintain physical, electronic and procedural safeguards that comply with federal regulations to protect your nonpublic personal information.
We collect nonpublic personal information about you from the following sources:

- information you provide on charge account applications and other forms, such as change of address forms, by telephone or in person to our representatives;
- information about your transactions with us, through the processing of sales and return transactions in our stores, on our web site and through our catalogs;
- information about your transactions with other retailers and financial institutions; and
- information from consumer reporting agencies.

All of the information we collect, as described above, may be disclosed, if you are an active or former holder of a Talbots Charge account issued by Talbots Classics National Bank ("TCNB").

We may share among our affiliates information as to experiences and transactions between you and one or more of our affiliates. Also, we may share among our affiliates other information about you (such as information you provided on your application) ("Other Information"). You may prohibit that sharing of Other Information by writing to us at TCNB, 4 Blackstone Valley Place, Lincoln, RI 02865.

We may disclose all of the nonpublic personal information we collect, as described above, to:

- nonaffiliated companies that perform services directly for us; and
- our affiliated retail and finance companies and to nonaffiliated third parties as permitted by law.

From time to time, we may also disclose your nonpublic personal information to carefully screened nonaffiliated third parties, such as other retailers or direct marketers, that do not perform services directly for us but that do offer quality products and services that may be of interest to you.

If you prefer that we do not disclose nonpublic personal information about you to nonaffiliated third parties such as other retailers or direct marketers, you may direct us not to make those disclosures (other than disclosures permitted by law). If you wish to opt out of such disclosures to nonaffiliated third parties, you may visit us at talbots.com and click on our Privacy and Security policy or call the following toll-free number: 1-866-473-5905, and advise us that you wish to opt out of any disclosure we may make to nonaffiliated third parties. For your convenience please have your Talbots Charge account number available when you call.

Revised 03/11

# Exhibit C

you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**G–3(A)—Long-Form Billing-Error Rights Model Form (Plans Other Than Home-Equity Plans)**

*Your Billing Rights: Keep This Document For Future Use*

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

*What To Do If You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

[Creditor Name]

[Creditor Address]

[You may also contact us on the Web: [Creditor Web or email address]]

In your letter, give us the following information:

• *Account information:* Your name and account number.

• *Dollar amount:* The dollar amount of the suspected error.

• *Description of problem:* If you think there is an error on your bill, describe what

you believe is wrong and why you believe it is a mistake.

You must contact us:

• Within 60 days after the error appeared on your statement.

• At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing* [or electronically]. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

*What Will Happen After We Receive Your Letter*

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct. While we investigate whether or not there has been an error:

• We cannot try to collect the amount in question, or report you as delinquent on that amount.

• The charge in question may remain on your statement, and we may continue to charge you interest on that amount.

• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

• We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

• *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.

• *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

*Your Rights If You Are Dissatisfied With Your Credit Card Purchases*

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* [or electronically] at:

[Creditor Name]

[Creditor Address]

[[Creditor Web or e-mail address]]

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**G–4—Alternative Billing-Error Rights Model Form (Home-Equity Plans)**

BILLING RIGHTS SUMMARY

*In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us [on a separate sheet] at [address] [the address shown on your bill] as soon as possible. [You may also contact us on the Web: [Creditor Web or e-mail address]] We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and account number.

• The dollar amount of the suspected error.

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)